IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2005 Session

## CANDICE D. DUNN v. DAVID L. SILVERS

**Appeal from the Juvenile Court for Bradley County**
**No. 9861-J     C. Van Deacon, Jr., Judge**

_____

**No. E2004-02015-COA-R3-JV - FILED DECEMBER 20, 2005**

_____

This appeal arises from a paternity action. The trial court, *inter alia*, established paternity, awarded custody of the parties' six month old child to Mother, established Father's co-parenting time, ordered Father to pay the birth expenses, and a portion of Mother's lost wages incurred as a result of giving birth to the child. Father appeals. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR. J., joined.

Clark Lee Shaw, Nashville, Tennessee, for the Appellant, David L. Silvers.

Robert S. Thompson, Cleveland, Tennessee, for the Appellee, Candice D. Dunn.

**OPINION**

*I. Procedural and Factual Background*

Candice D. Dunn, ("Mother") and David L. Silvers ("Father") were co-workers at the Duracell plant in Cleveland, Tennessee. Their work relationship evolved into a sexual relationship which lasted for approximately eight months. As a result of this relationship, Mother became pregnant and delivered a baby girl on August 29, 2003. The parties terminated their social relationship before the child's birth and Father was not involved in any pre-birth doctor visits nor was he present at the child's delivery. On January 6, 2004, Mother filed a petition to establish paternity and obtain support pursuant to Tenn. Code Ann. § 36-2-108. An agreed temporary parenting plan was entered establishing Father's visitation rights and child support obligation.

Following a hearing on March 16, 2004, the trial court made certain findings and orders, which we summarize, in pertinent part, as follows:

1) Father acknowledged paternity of the minor child.

2) Mother was awarded custody of the child.

3) The parenting plan of Mother, as modified, was adopted. This plan provided, *inter alia*, that Father's co-parenting time with the child was every other Saturday from 9:00 a.m. until 5:00 p.m. and every other Tuesday evening from 3:30 p.m. until 8:30 p.m. Once the child reached the age of eighteen months, Father's co-parenting time was increased to every other weekend from Friday at 6:00 p.m. until Sunday at 3:00 p.m. Holidays were equally divided and Father had two non-consecutive weeks of co-parenting time in the summer.

4) Father was ordered to pay $768.57 as reimbursement for one-half of Mother's non-covered medical expenses for the birth of the child.

5) Mother was off work approximately sixteen (16) weeks as a result of giving birth to the child and incurred $7,536 in lost wages. Father was ordered to reimburse Mother $4,000 for a portion of her lost wages.

6) Father was ordered to reimburse Mother one-half of the post-birth medical expenses incurred by Mother for the child in the amount of $512.25.

7) Father was ordered to have a medical evaluation within 14 days because the trial court found he had communicated a sexually transmitted disease to Mother.

From this decision, Father appeals.

## II. Issues for Review

Father presents for our review four issues: 1) whether the trial court erred in failing to grant father equal co-parenting time with the minor child, 2) whether the trial court erred in relying upon the "tender years doctrine" in determining custody and co-parenting time, 3) whether the trial court erred in finding that Mother had contracted a sexually transmitted disease from Father, and 4) whether the trial court erred in finding that Father should reimburse Mother one-half of her lost wages from work following the birth of the minor child.

## III. Standard of Review

This is a non-jury case and, and accordingly, our review is de novo upon the record of the trial court without any presumption of correctness attaching to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); Tenn. R. App. P. 13(d). We must, however, presume the trial court's factual findings to be correct absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. Analysis

### A. Custody and Co-Parenting Time

We combine for discussion Father's first two issues regarding custody and co-parenting time. Father argues that the trial court failed to consider the statutory factors set forth in Tenn. Code Ann. § 36-6-106 and instead placed too much emphasis on the child's young age and Father's three prior convictions for driving under the influence. Father argues that too little consideration was given to Mother's desire to limit Father's parenting time and her health problems and depression. Father contends in this appeal that he and Mother should have equal parenting time with the child. We disagree.

The record in this case shows that these parties were co-workers who had an intimate relationship for approximately eight months. When Mother told Father she was pregnant, his response was "you're kidding, aren't you?" Mother invited Father to attend doctor visits with her, but Father chose not to attend. According to Mother, Father was consuming alcohol every time she was with him and that most of that time he was drunk. Father admitted to having three prior convictions for driving under the influence. Mother testified that Father smoked marijuana every time she was at his house. Mother testified that she had observed Father driving his vehicle at a high rate of speed on a public street while the young child was not in a car seat, but riding in the lap of Father's spouse. Mother testified that after having unprotected sex with Father she contracted genital herpes. Father's current wife testified by deposition that Father had given her gonorrhea, that she had received medical treatment for gonorrhea, and that she had given Father an injection for the disease. Father denied in his deposition that he had given Mother herpes, that he had given his wife gonorrhea, and that his wife had given him an injection for the disease, but admitted in his testimony at trial that he had received the injection for gonorrhea from his wife. Mother admitted that she takes medication for depression and fibromyalgia.

In this appeal, Father takes issue with the custody and visitation arrangements made by the trial court. We note from the record that Father did not file any pleadings requesting custody and at the trial of the case only asked the trial court to award him equal co-parenting time. Therefore, Father cannot on appeal seek an award of custody that he did not ask for in the trial court. Issues not

raised in the trial court may not be raised for the first time on appeal. Tenn. R. App. P. 36(a), *Simpson v. Frontier Cmty. Credit Union,* 810 S.W.2d 147, 153 ( Tenn. 1991).

Nevertheless, we have reviewed the trial court's decision regarding custody and visitation. We find no error based on our review of the proof presented to the trial court and the applicable authorities. This is a paternity action and there had been no prior judicial decree regarding custody. Accordingly, the comparative fitness test is the proper standard to be applied in making the custody determination. *Durant v. Howard*, No. E2000-02072-COA-R3-CV, 2001 WL 1103500 at *2 (Tenn. Ct. App. Sept. 20, 2001) *no appl. perm. filed*. In assessing the comparative fitness of the parties, courts are instructed to look at numerous factors set forth in Tenn. Code Ann. § 36-6-106(a), which are as follows:

> (a) In ... any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; ...
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> .    .    .    .
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent,

consistent with the best interest of the child.

Appellate courts afford broad discretion to the trial courts in their determination of custody and visitation arrangements. *See Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996), *D. v. K.*, 917 S.W.2d 682 (Tenn. Ct. App. 1995), *Nichols v. Nichols*, 792 S.W.2d 713 (Tenn. 1990). It is well settled by this Court that "custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility ..." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Appellate courts are thus understandably reluctant to interfere with the trial court's reasonable exercise of its broad discretion. *Id.; see also Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959)) (findings of the trial court which are dependent upon witness credibility are entitled to great weight on appeal.) This court will decline to disturb a parenting arrangement determined by the trial court unless that decision is based on the application of incorrect legal principles, is unsupported by a preponderance of the evidence, or is against logic and reasoning. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001)*.* It is not the function of the appellate court to tweak a visitation order. *Eldridge* at 88. In making its custody and visitation determination, the trial court heard testimony of Father's three previous convictions for driving under the influence, excessive alcohol consumption, occasional marijuana use, and the testimony of Mother and his current wife who believed they had contracted a sexually transmitted disease from Father. After careful review, we find that the evidence does not preponderate against the trial court's decision regarding custody and visitation.

Contrary to Father's argument on appeal that the trial court inappropriately relied upon testimony regarding Father's smoking habit, the trial court did not state in its memorandum opinion that Father's cigarette smoking was a factor in making its custody or co-parenting determination and we do not find that it was a factor.

Father's argument that the trial court erred in relying upon the "tender years" doctrine in making its custody determination is misplaced. In fashioning the visitation arrangement, the trial court stated, "I have a very structured early on visitation program because of the tender years doctrine in the past and the obvious need to ensure the competence of parents in raising these babies." While the trial court mentioned the "tender years" doctrine in its memorandum opinion, we agree with Mother's assertion that the trial court was fully aware the doctrine is no longer applicable. We find no indication in the record that the trial court relied upon this doctrine in making its co-parenting determination.

The evidence does not preponderate against the trial court's decision and accordingly, we affirm the trial court's decision regarding custody and visitation.

### B. Sexually Transmitted Disease

Father argues that the trial court erred in finding that Mother had contracted a sexually transmitted disease from Father. This argument fails for two reasons. Father's argument on this issue stated in its entirety from his brief is as follows:

In this case the mother testified that the father had given her herpes. T.pp. 23,24. The father testified that he had never had herpes. T.Pp. 81,95,96. The medical test filed with the trial court corroborates the father's statement, i.e. he has not had herpes. Based upon this the trial court's finding that the father transmitted a sexually transmitted disease to the mother is not supported by this record and this finding should be reversed and the record expunged to protect the father's reputation.

Tenn. R. App. P. 27 (7) requires that briefs shall contain an argument supported by citations to authorities relied upon. We find that Father has waived this issue by failing to cite any authority in support of his argument. *State v. Chance*, 778 S.W.2d 457, 462 (Tenn. Crim. App. 1989).

Despite this waiver, we have reviewed this issue and it is our determination that the evidence- the testimony of Mother and Father's current wife that Father had given them a sexually transmitted disease- does not preponderate against the decision of the trial court. Father requests in his appellate brief an order expunging this finding from the trial court's order. In support of his position, Father relies on a copy of a medical test filed in the trial court after the notice of appeal was filed. Father cites no legal authority for seeking this relief and he failed to seek this relief in the trial court. Appellate courts do not "consider issues not dealt with in the trial court and not properly developed in the proof." *Harlan v. Hardaway*, 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990). For these reasons, this issue is without merit.

### C. Reimbursement for Pregnancy, Confinement and Recovery Expenses

Father's final issue is whether the trial court erred in requiring him to reimburse Mother $4,000 for the sixteen (16) weeks she was out of work following the birth of the minor child. Father's argument on this issue, stated in its entirety, is as follows:

In the case at bar, the Trial Court's determination for reimbursement to the mother for an extended period of time beyond that normally needed for post natal care should not be allowed to stand and the Trial Court should be reversed. There was no testimony from the mother and limited testimony from the father that he did not believe he should be required to pay 16 weeks lost wages when no proof as to why this was necessary was presented by the mother. See T.pp 108, 109, 129, 130. This is not provided in the statute and should be reversed by this Court. See Tenn. Code Ann. § 36-2-311(13).

Tenn. Code Ann. § 36-2-311(a)(13) states:

(a) Upon establishing parentage, the court shall make an order declaring the father of the child.  This order shall include the following:

.    .    .    .

(13) Determination of liability for a mother's reasonable expenses for her pregnancy, confinement and recovery to either or both parties[.]

Mother testified to the following on direct examination:

Q:      Okay.  All right.  Are you asking the Court to have him reimburse you for the medical and the birthing expenses?

A:      Yes, I am.

Q:      In addition to that have you incurred some lost wages?

A:      Yes, I have.  I was out of work for 16 weeks, and I am asking that he reimburse me for 8 of the weeks that I was off.

Q:      Okay.  And what would the itemization - - what would your net income be for the eight weeks that you were off work?

A:      My net for eight weeks is $3,768.

Q:      3,700 - -

A:      $68.

Q:      - - $68.  And again, that's not the full amount that you were off?

A:      That's half of what I was off.

On cross-examination, Mother testified to the following regarding her reimbursement for lost wages:

Q:      So the Court understands, your claim for loss of income after the child was born, your employer, Duracell, provides for some paid leave for maternity, does it not?

A:      It pays for one week for maternity, yes.

Q:     And how long - -

A:     I was out of work from August the 6th until January the 5th, and I'm only asking for eight weeks of lost wages.

Q:     So the Court understands, presently you are no - - you're not breast-feeding this child?

A:     I am no longer breast-feeding.

Father did not testify on direct examination about the expenses for lost wages. On cross examination he stated the following:

Q:     Do you agree to pay the - - besides the birthing expenses, the medical expenses on your behalf and that your daughter has incurred?

A:     I believe whatever extra she took for being out, I wouldn't agree to it.

Q:     Okay. So you don't want to help support her on her lost wages?

A:     Duracell gives pretty ample time for females. I mean, I've never had a baby, so I don't know, but as far as the time off they get, it's more than a lot of places.

Q:     She was off a total of 16 weeks, is what I'm telling you, and Duracell compensated her for just a few of those - - a couple of those weeks, one week.

A:     Well, if she goes out on medical leave, why should I pay her because she said that I stressed her out? Is that what she's saying?

Q:     I'm just asking you if you'd be willing to pay for the time she's off work.

A:     (No response.)

Father argues that the reimbursement for recovery expenses should not be beyond what is "normally needed for postnatal care." Father did not offer any proof at trial as to the length of time that would have been reasonable for Mother to have been out of work having the parties' child.

Mother argues that Tenn. Code Ann. § 36-2-311(a)(13) allows a trial court to determine liability for reasonable expenses for pregnancy, confinement and recovery to either or both parties and relies on *Grosfelt v. Epling*, 718 S.W.2d 670 (Tenn. Ct. App. 1986). Mother asserts that the trial court did not order reimbursement for all of her lost wages, but only approximately one-half of her lost wages, which was a reasonable amount.

We agree with Mother. In *Grosfelt*, the mother testified that during the later stages of her pregnancy she was unable to obtain employment and offered proof as to the difference between the amount of money she received from governmental aid programs and the amount of money she would have received had she been able to obtain employment in her occupation as a teacher. *Grosfelt* at 672. The trial court, relying on Tenn. Code Ann. § 36-2-102, ruled that the law in Tennessee makes the father of a child born out of wedlock "liable for the expenses of the mother's confinement and recovery as well as such expenses in connection with her pregnancy as the court in its discretion may deem proper," and awarded her $2,800 for lost wages sustained during her confinement and recovery related to the birth of the child. *Id.* It should be noted that Tenn. Code Ann. § 36-2-102 has been replaced by Tenn. Code Ann. § 36-2-311(a)(13), the difference being that the new code section allows the trial court to determine liability for a mother's "reasonable expenses for her pregnancy, confinement and recovery to either or both parties," instead of solely placing that liability on the father. By ordering Father to reimburse Mother approximately one-half of her lost wages, the trial court determined that both Mother and Father were liable for those expenses. The trial court's decision regarding the amount of expenses Father should pay to Mother was certainly reasonable. The determination of this issue rested within the sound discretion of the trial court. *Morando v. McGahan*, No. M2000-01551-COA-R3-JV, 2002 WL 54307, at *5 (Tenn. Ct. App. W.S. filed January 15, 2002) *no appl. perm. filed*. We do not find that the trial court abused its discretion. Accordingly, we affirm the trial court's decision on this issue.

### V. Conclusion

For the foregoing reasons the judgment of the trial court is affirmed and the cause remanded for collection of costs below. Costs on appeal are adjudged against the Appellant, David L. Silvers.

_____
SHARON G. LEE, JUDGE